1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   SEKAYI RUDO WHITE,                    Case No. 8:20-cv-00814-JLS-KES

12              Petitioner,

13        v.                               ORDER TO SHOW CAUSE WHY
                                           PETITION SHOULD NOT BE
14   PATRICK COVELLO, Warden,              DISMISSED AS UNTIMELY

15              Respondent.

16

17                                     **I.**

18                            **INTRODUCTION**

19        On April 21, 2020, Sekayi Rudo White ("Petitioner") constructively filed a

20   Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28

21   U.S.C. § 2254.  ("Petition" at Dkt. 1.)[1]  Petitioner "was sentenced to life in prison

22   after committing multiple sex crimes against multiple victims."  People v. Sekayi

---

23            [1] April 21, 2020 is the date Petitioner signed the Petition and the date on the
24   Petition's proof of service.  (Dkt. 1 at 15, 134.)  The Court assumes, for purposes of
     this order, that Petitioner is entitled to the benefit of the prison mailbox rule, under
25   which "a prisoner's pro se habeas petition is deemed filed when he hands it over to
     prison authorities for mailing to the relevant court."  Campbell v. Henry, 614 F.3d
26   1056, 1058-59 (9th Cir. 2010) (citation omitted); see also Butler v. Long, 752 F.3d
27   1177, 1178 n.1 (9th Cir. 2014) (noting that, in the absence of other evidence, courts
     generally deem a habeas petition filed on the day it is signed).
28

                                        1

Rudo White, No. G047252, 2013 Cal. App. Unpub. LEXIS 9408, at *1, 2013 WL 6858191, at *1 (Dec. 30, 2013).  As discussed more fully below, the Court orders Petitioner to show cause why the Petition should not be dismissed as untimely.

## II.

## PROCEDURAL HISTORY[2]

### A.   Conviction and Direct Appeal.

On February 2, 2011, in Orange County Superior Court case no. 06HF2048, a jury found Petitioner guilty of six counts of forcible rape, two counts of first degree residential burglary, two counts of criminal threats, one count of attempted forcible rape, one count of assault with intent to commit a sexual assault, one county of sexual battery by restraint, and one count of dissuading a witness.  On June 22, 2012, he was sentenced to an indeterminate term of 112 years to life in prison.  White, 2013 WL 6858191, at *1, 2013 Cal. App. Unpub. LEXIS 9408, at *1.

He filed an appeal arguing that "instructional error tainted the jury's verdict, and one of his convictions must be reversed due to insufficient evidence."[3]  Id.  On December 30, 2013, the California Court of Appeal affirmed his convictions.  Id.

On February 13, 2014, Petitioner filed a petition for review in the California Supreme Court (case no. S216465), which was denied on March 19, 2014.  (Pet. at 10.)  He did not file a petition for writ of certiorari in the U.S. Supreme Court.  (Id. at 12.)

---

[2] This procedural history is taken from the Petition and the public records of the California appellate courts, which are available at: https://appellatecases.court info.ca.gov.  The Court takes judicial notice of the latter.  See Fed. R. Evid. 201(b)(2); Harris v. Cty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012).

[3] Petitioner argued there was "insufficient evidence to support the jury's verdict he raped Sarah the first time they had sex," as alleged in count eight.  White, 2013 WL 6858191, at *1 n.1, 2013 Cal. App. Unpub. LEXIS 9408, at *1 n.1.

2

**B.** **Receipt of Trial Record.**

In April 2014, Petitioner's appellate counsel David A. Morse "mailed Petitioner all case file material in his possession, which consisted only of the CT and RT transcripts [Clerk's and Reporter's transcripts] of Petitioner's trial proceedings" and did not include "any of the pre-trial discovery, investigator reports, or any other evidentiary documents." (Id. at 69.)

In March 2015, Petitioner filed a civil complaint for conversion and intentional infliction of emotional distress against Michael Molfetta, an attorney who was appointed to represent him in the Superior Court for purposes of filing a motion for new trial. Petitioner alleged that Molfetta failed "to provide [him] with access to (or a copy of) the entire contents of his criminal case file in response to [Petitioner's] written requests." (Id. at 123.)

As a result of this lawsuit, in August 2016 more documents were provided to Petitioner at Mule Creek Prison. (Id. at 35, 69, 127-28.)

**C.** **First Round of Habeas Petitions in the State Courts.[4]**

On March 29, 2018, he filed a habeas petition in the Orange County Superior Court (case no. M-17467), and this petition was denied on May 17, 2018. (Id. at 10-11 [describing procedural history]; id. at 23-31 [order denying].)

On June 19, 2018, Petitioner filed a habeas petition in the California Court of Appeal (case no. G056454), which was denied on August 16, 2018. (Id. at 22 [order denying]).

On September 4, 2018, Petitioner filed a habeas petition in the California Supreme Court (case no. S251181), which was denied on February 13, 2019. (Id.

---

[4] The present federal Petition challenges Petitioner's convictions in Orange County Superior Court case no. 06HF2048. (Pet. at 2, 9.) Petitioner also filed habeas petitions related to state court case no. 30-2015-000777735. This order lists only those petitions that appear to be related to the case Petitioner is presently challenging in these federal proceedings.

1   at 21 [order denying]).

2   **D.      Second Round of Habeas Petitions in the State Courts.**

3       In June 2019, a bench trial was held in Plaintiff's civil action against

4   Molfetta, his former defense attorney.  (Id. at 124.)  On August 1, 2019, the

5   Superior Court issued an order with detailed factual findings and entered judgment

6   in favor of Molfetta.  (Id. at 123-33.)

7       Petitioner appears to allege that, sometime after this, he filed a new habeas

8   petition in the Superior Court.  (Id. at 2-3.)  It is not clear when he filed such a

9   petition or when it was denied.

10      On May 1, 2020, Petitioner filed a habeas petition in the California Court of

11  Appeal (case no. G059047), which remains pending.

12  **III.**

13  **CLAIMS**

14      Petitioner explains that he is raising 11 claims, 6 of which were exhausted in

15  Petitioner's first round of state habeas petitions and 5 of which are the subject of his

16  ongoing, second round of state habeas proceedings.  (Pet. at 2.)

17      Liberally construing the Petition, the Court understands the exhausted claims

18  to be as follows:

19      1.  Ground One: The Superior Court erred by denying his first state habeas

20         petition, which raised the claims identified below as Grounds Two

21         through Six.  (Pet. at 12.)

22      2.  Ground Two:  Ineffective assistance of counsel ("IAC") by appellate

23         counsel for failing to (a) obtain Petitioner's complete trial record, and

24         (b) raise multiple "winning" arguments on appeal.  (Id. at 12, 35, 69-82.)

25      3.  Ground Three:  There is "newly discovered evidence" that Petitioner is

26         "actually innocent" of the attacks on Jennifer D. and Sarah L.  (Id. at 13,

27

28

4

36.)  Petitioner refers to the "trial record and police reports."  (Id. at 36.)[5]

4.  <u>Ground Four</u>:  Petitioner's rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) were violated during a custodial interrogation conducted while he was intoxicated.  (Id. at 13, 38.)

5.  <u>Ground Five</u>: Petitioner's rights under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) were violated by the state's failure to provide exculpatory material about "the cover up investigation of pedophile officer" Gerald Stenger, which could have been used at trial to impeach prosecution witnesses Anthony Ferrentino and Myrna Caballero.  (Id. at 13, 39.)

6.  <u>Ground Six</u>:  Petitioner was denied his right to counsel and due process by conflicts of interest and delays.  (Id. at 13, 41.)

Although the Petition does not attach a copy of Petitioner's most recent state habeas petitions, Petitioner summarizes the currently unexhausted claims as follows:

7.  <u>Ground Seven</u>: IAC of trial counsel for failing to investigate; and IAC of conflict trial counsel and appellate counsel for failing to raise this issue.  (Id. at 2, 7.)

8.  <u>Ground Eight</u>: Newly discovered evidence shows Petitioner is actually innocent of the attack on Sarah L. and/or Latisha Bain.  (Id. at 3 ["Newly discovered exonerating evidence proves that Petitioner is actually and

_____

[5] In footnotes of the section of Petitioner's legal memorandum addressing Ground Three, Petitioner appears to raise several other arguments, which are not included in the table of contents of his 2018 California Supreme Court habeas petition (Pet. at 35-42), or in the description of the claims raised in his federal Petition (id. at 12-13).  These claims are: (a) IAC of trial counsel based on failure to hire a medical expert to prove that there was no sexual assault or penetration of Latisha B. (id. at 90 n.3); (b) IAC of trial counsel based on failure to call alibi witnesses Erik Boyd and DeAllesandro Lamar (id. at 95 n.1); and (c) Confrontation Clause violation because the trial court would not impeachment of witness Sarah Barragan (id. at 95 n.2).  It is not clear whether these claims are exhausted or whether Petitioner is attempting to raise them in these federal habeas proceedings.

factually innocent of the February 21, 2007 attack of Sarah L[.]"]; <u>id.</u> at 7

["Newly discovered evidence from an exonerating witness, Lawrence

Holland ... proves Petitioner is actually innocent of the February 21, 2007

forcible rape of Latisha B[.]"])

9. <u>Ground Nine</u>: "Newly discovered evidence proves prosecutorial

misconduct for withholding impeachment evidence of the State's star

government witness and withholding exculpatory exonerating

scientific/technological evidence of Petitioner's actual innocence." (<u>Id.</u> at

3.)

10. <u>Ground Ten</u>: New scientific evidence about the effect of alcohol on

memory shows that false testimony was given at Petitioner's trial. (<u>Id.</u> at

3, 7.)

11. <u>Ground Eleven</u>: Cumulative error. (<u>Id.</u>)

### III.

### DISCUSSION

Rule 4 of the Rules Governing Section 2254 Cases in the United States

District Courts requires the district court to dismiss a habeas petition "[i]f it plainly

appears from the petition and any attached exhibits that the petitioner is not entitled

to relief in the district court...." Under this rule, district courts are "permitted, but

not obliged, to consider, <u>sua</u> <u>sponte</u>, the timeliness of a state prisoner's habeas

petition." <u>Day v. McDonough</u>, 547 U.S. 198, 202 (2006). "[B]efore acting on its

own initiative, a court must accord the parties fair notice and an opportunity to

present their positions." <u>Id.</u>

Here, the Court exercises its discretion to consider the timeliness of

Petitioner's claims <u>sua</u> <u>sponte</u> before considering his request for a stay, because

Petitioner is not entitled to a <u>Rhines</u> stay if his Petition is untimely. <u>See</u> <u>King v.</u>

<u>Frauenheim</u>, No. 14-cv-05267, 2016 U.S. Dist. LEXIS 20634, at *20, 2016 WL

687867, at *6 (N.D. Cal. Feb. 19, 2016) ("<u>Rhines</u> does not allow a petitioner to

6

1  revive a time-barred claim."); <u>see</u> <u>also</u> <u>Mena v. Long</u>, 813 F.3d 907, 908 (9th Cir.

2  2016) ("The Supreme Court held in <u>Rhines</u> ... that a district court has discretion

3  to stay, rather than dismiss, a *timely-filed* 'mixed' petition....") (emphasis added).

4  **A.   <u>Running of the One-Year Statute of Limitations.</u>**

5       This action is subject to the Antiterrorism and Effective Death Penalty Act of

6  1996 ("AEDPA"), which provides as follows:

7       **(d)  (1)** A 1-year period of limitation shall apply to an application for

8       a writ of habeas corpus by a person in custody pursuant to the

9       judgment of a State court. The limitation period shall run from the

10      latest of--

11      **(A)**  the date on which the judgment became final by the conclusion of

12      direct review or the expiration of the time for seeking such review;

13      **(B)**  the date on which the impediment to filing an application created

14      by State action in violation of the Constitution or laws of the United

15      States is removed, if the applicant was prevented from filing by such

16      State action;

17      **(C)**  the date on which the constitutional right asserted was initially

18      recognized by the Supreme Court, if the right has been newly

19      recognized by the Supreme Court and made retroactively applicable to

20      cases on collateral review; or

21      **(D)**  the date on which the factual predicate of the claim or claims

22      presented could have been discovered through the exercise of due

23      diligence.

24  28 U.S.C. § 2244(d)(1).

25       Thus, AEDPA "establishes a 1-year time limitation for a state prisoner to file

26  a federal habeas corpus petition." <u>Jimenez v. Quarterman</u>, 555 U.S. 113, 114

27  (2009).  The statute of limitations period generally runs from "the date on which

28  the judgment became final by the conclusion of direct review or the expiration of

7

the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  "[F]or a state
prisoner who does not seek review in a State's highest court, the judgment becomes
'final' [for purposes of § 2244(d)(1)(A)] on the date that the time for seeking such
review expires." Gonzalez v. Thaler, 565 U.S. 134, 137 (2012).  In contrast, where
a state defendant seeks direct review in a state's highest court, the judgment
becomes final when time for seeking certiorari review in the U.S. Supreme Court
expires.  See Jimenez, 555 U.S. at 120.  This is because the U.S. Supreme Court has
jurisdiction over final decisions of the highest state court "in which a decision could
be had" respecting a constitutional right or other federal law.  28 U.S.C. § 1257(a).
To appeal to the U.S. Supreme Court, a petition for writ of certiorari must be filed
within 90 days after entry of the state court judgment.  U.S. Sup. Ct. R. 13.

### 1.    Date Conviction Became Final Under § 2244(d)(1)(A).

Petitioner's conviction became final 90 days after the California Supreme
Court denied review **on direct appeal**, i.e., March 19, 2014 + 90 days = July 17,
2014.  Petitioner's suggestion that his one-year AEDPA clock only began to run
when the California Supreme Court denied his petition for writ of habeas corpus
(Pet. at 3) is incorrect.  If the AEDPA clock began running when Petitioner's
conviction became final under § 2244(d)(1)(A), the deadline expired on July 18,
2015 (absent an alternative start date or tolling of some kind).  Petitioner did not
file his federal Petition until April 2020.State Created Impediment Under
§ 2244(d)(1)(B).

Petitioner argues that the failure of his appointed defense counsel, Molfetta,
to give him the file from his criminal case was a "state-created impediment" to his
filing a federal habeas petition, which means that "pursuant to 28 U.S.C.
§ 2244(d)(1)(B) Petitioner's 1-year clock began to run on February 13, 2019."  (Pet.
at 4.)  However, district courts in this circuit have held that the "actions or
omissions of Petitioner's counsel are not attributable to the state" under
§ 2244(d)(1)(B), even if counsel was appointed.  Favela v. Madden, No. 16-cv-

1    8896, 2017 U.S. Dist. LEXIS 61230, at *8, 2017 WL 1449228, at *4 (C.D. Cal.

2    Mar. 15, 2017) (collecting cases), report and recommendation ("R&R")

3    adopted, 2017 U.S. Dist. LEXIS 61226, 2017 WL 1439664 (C.D. Cal. Apr. 21,

4    2017); see also Stewart v. McComber, No. 14-cv-01747-DSF-DFM, 2014 U.S.

5    Dist. LEXIS 77626, at *6, 2014 WL 2510927, at *2 (C.D. Cal. Apr. 25, 2014)

6    (reasoning that "Petitioner's counsel was not acting on behalf of the state; rather,

7    Petitioner's counsel represented Petitioner personally"), R&R adopted, 2014 U.S.

8    Dist. LEXIS 77622, 2014 WL 2511216 (C.D. Cal. June 4, 2014).  Cf. Polk Cty. v.

9    Dodson, 454 U.S. 312, 320 (1981) (holding that public defenders do not act under

10   color of law for purposes of civil rights claims under 42 U.S.C. § 1983).

11         Petitioner has not shown that he is entitled to an alternative start date based

12   on a state-created impediment to filing under § 2244(d)(1)(B).

13         **2.    Newly Discovered Evidence Under § 2244(d)(1)(D).**

14         The Petition cites several pieces of "newly discovered" evidence, which

15   Petitioner argues entitles him to "equitable tolling."  (Pet. at 4.)  Because the

16   Petition was filed pro se, the Court must liberally construe it.  The Court therefore

17   also considers whether this evidence could be grounds for an alternative start date

18   to the AEDPA statute of limitations under § 2244(d)(1)(D), i.e., on "the date on

19   which the factual predicate of the claim or claims presented could have been

20   discovered through the exercise of due diligence."  "The 'due diligence' clock starts

21   ticking when a person knows or through diligence could discover the vital facts,

22   regardless of when their legal significance is actually discovered."  Ford v.

23   Gonzalez, 683 F.3d 1230, 1235 (9th Cir. 2012), cert. denied, 568 U.S. 1053 (2012).

24         a.    Evidence from Molfetta civil trial regarding lack of

25              investigation by former counsel McBride.

26         The Petition argues that, during the June 2019 bench trial on his civil claims

27   against former defense counsel Molfetta, Petitioner gained several pieces of new

28   evidence that support his unexhausted claims for habeas relief.  (See Pet. at 7, 124.)

1    Petitioner alleges that, during this trial, "Petitioner's former trial counsel
2  Frederick L. McBride admitted under oath that he conducted absolutely no
3  investigation in Petitioner's case and further admitted that he did not interview any
4  witnesses that testified at Petitioner's trial before trial." (Id. at 7.)  Petitioner
5  appears to be using these allegations to support unexhausted Ground Seven, i.e., his
6  claim of IAC against McBride for failing to investigate and against later counsel for
7  failing "to discover and present McBride's failure in the new trial motion or on
8  appeal." (Id. at 2.)

9    It appears that Petitioner had known for some time that, in his opinion,
10  McBride had not sufficiently investigated his claims.  In exhausted Ground 6, he
11  alleges that he wrote the Superior Court letters alleging this, which was what led the
12  court to discharge McBride and appoint Molfetta in 2011.  (Pet. at 112-13.)  In
13  responding to this OSC, Petitioner should explain: (a) how what he learned during
14  the 2019 trial was new or different, (b) why he could not have discovered this
15  evidence earlier with the exercise of due diligence, and (c) how McBride's failure
16  to interview witnesses prejudiced him.  See generally Hasan v. Galaza, 254 F.3d
17  1150, 1154 (9th Cir. 2001) ("[T]o have the factual predicate for a habeas petition
18  based on ineffective assistance of counsel, a petitioner must have discovered (or
19  with the exercise of due diligence could have discovered) facts suggesting both
20  unreasonable performance *and* resulting prejudice"; finding trial court should have
21  applied § 2244(d)(1)(D) where petitioner only later learned of facts supporting
22  prejudice argument).

23    b.    Evidence from Molfetta civil trial regarding Brady claim.

24    In exhausted Ground Five, Petitioner argues that his Brady rights were
25  violated because certain impeachment evidence was only belatedly provided to
26  defense counsel McBride near the end of the trial.  (Pet. at 13, 39, 102-11.)  This
27  evidence concerned Investigator Caballero and District Attorney Ferrentino's
28  involvement in an alleged "cover-up" during an unrelated investigation into

1   allegations of child molestation against another officer, Stenger.  (Id.)  He

2   complains that the defense "was never given and still does not have a copy of phone

3   messages Inv. Caballero left to suspect Stenger" (the target of the investigation);

4   instead, he alleged, the defense was only given "a paper xerox photocopy of the

5   actual CD-ROM...."  (Id. at 103.)  He argues, based on a summary of the phone

6   messages in a letter, that they show a "definite tone of familiarity" between

7   Caballero and Stenger, and if he had "been given this information at trial he would

8   have been able to call Inv. Caballero and DDA Ferrentino to testify and expose that

9   they both have worked together before, committing 'crimes against justice' and of

10  moral turpitude to subvert the law."  (Id. at 103-04.)

11       Unexhausted Ground Nine appears to raise a similar claim: "prosecutorial

12  misconduct for withholding impeachment evidence of the state's star government

13  witness," Caballero.  (Id. at 3.)  Petitioner alleges that, at the June 2019 civil trial

14  against Molfetta, he discovered the following evidence:

15       McBride ... confirmed that he did not remember signing for

16       exculpatory impeachment evidence that Petitioner alleges the

17       prosecution withheld.  [T]he [f]ormer prosecutor in Petitioner's case,

18       DDA [deputy district attorney] Anthony Ferrentino testified that

19       Brady discovery arose during trial but was unrelated to discovery that

20       Petitioner cited incorrectly in his initial petition.  Ferrentino also

21       provided withheld exculpatory Brady evidence in the form of a CD-

22       ROM regarding a corrupt investigator, Myrna Caballero[,] who was

23       the state's star government witness in Petitioner's case.  Ferrentino

24       also provided forged Brady receipts citing that he had turned over the

25       Caballero CD-ROM before Petitioner's trial.

26  (Id. at 7.)

27       Based on this summary, it appears that the prosecutor actually testified that

28  he *had* turned over the CD-ROM to the defense, even though defense counsel

11

1   testified that he did not remember signing for it.  In responding to this OSC,

2   Petitioner should explain: (a) how this new evidence supports his <u>Brady</u> claim, and

3   (b) why it could not have been discovered earlier with the exercise of due diligence.

4                    c.    Evidence from Lawrence Holland.

5          In unexhausted Ground Eight, Petitioner claims that he has "newly

6   discovered exonerating evidence [which] proves that [he] is actually and factually

7   innocent of the February 21, 2007 attack of Sarah Lundquist," but he does not

8   explain what this evidence is.  (Pet. at 3.)  Later in the Petition, Petitioner cites

9   "newly discovered evidence from an exonerating witness, Lawrence Holland that

10  proves Petitioner is actually innocent of the February 21, 2007 forcible rape of

11  Latisha Bain."  (<u>Id.</u> at 7.)

12         In his response to this OSC,  Petitioner should clarify this claim and explain:

13  (a) what new evidence Mr. Holland could offer, (b) which charge this evidence

14  relates to, (c) when Petitioner discovered it, and (d) why it could not have been

15  discovered within the AEDPA limitations period with the exercise of due diligence.

16                    d.    New study about the effects of alcohol on memory loss.

17         Petitioner cites an "April 2018 study and research" about the effects of

18  alcohol on memory loss.  (Pet. at 7.)  He appears to be using this evidence to

19  support unexhausted Ground Ten, i.e., his "Fifth, Sixth, and Fourteenth

20  Amendment claim alleging that newly discovered scientific evidence proves that

21  false expert testimony and false witness testimony was given to Petitioner's jury."

22  (<u>Id.</u> at 3.)

23         This study does not appear to be the factual predicate of a new claim that

24  could not have been brought earlier.  Petitioner did not require such a study to argue

25  that witnesses' testimony was unreliable because they were intoxicated at the time

26  of the events about which they were testifying.  See <u>McAuley v. Ryan</u>, No. 14-cv-

27  01756, 2015 U.S. Dist. LEXIS 99702, at *4-5, 2015 WL 4594521, at *2 (D. Ariz.

28  July 30, 2015) ("[T]he NAS report does not qualify as the 'factual predicate' of his

                                        12

1   new claim.  Rather, the factual predicate of Petitioner's claim is the fiber, tire track,

2   and shoe print evidence, which Petitioner was aware of at the time of trial. ... To

3   any extent Petitioner argues that it is the unreliability of the evidence that is the

4   predicate of his claim, the NAS report was not key to discovering that fact.").At

5   present, Petitioner has not demonstrated that he is entitled to a later start date for the

6   AEDPA statute of limitations based on newly discovered evidence under

7   § 2244(d)(1)(D).

8   **B.**    **Statutory Tolling.**

9          AEDPA provides for statutory tolling, as follows:

10         The time during which a properly filed application for State post-

11         conviction or other collateral review with respect to the pertinent

12         judgment or claim is pending shall not be counted toward any period

13         of limitation under this subsection.

14   28 U.S.C. § 2244(d)(2).  The United States Supreme Court has interpreted this

15   language to mean that AEDPA's statute of limitations is tolled from the time the

16   first state habeas petition is filed until the California Supreme Court rejects a

17   petitioner's final collateral challenge, so long as the petitioner has not unreasonably

18   delayed during the gaps between sequential filings.  Carey v. Saffold, 536 U.S. 214,

19   219-21 (2002) (holding that, for purposes of statutory tolling, a California

20   petitioner's application for collateral review remains  pending during the intervals

21   between the time a lower state court denies the application and the time the

22   petitioner files a further petition in a higher state court).

23         However, statutory tolling "does not permit the reinitiation of a limitations

24   period that has ended before the state petition was filed," even if the state petition

25   was timely filed.  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.), cert. denied,

26   540 U.S. 924 (2003).  As described above in the Procedural History section of this

27   OSC, Petitioner did not file any state habeas petitions until March 2018.    Because

28   these petitions appear to have been filed after the expiration of his AEDPA

1   deadline, they cannot create statutory tolling.

2   **C.   <u>Equitable Tolling.</u>**

3       AEDPA's one-year limitation period is subject to equitable tolling if the

4   petitioner shows: "'(1) that he has been pursuing his rights diligently, and (2) that

5   some extraordinary circumstance stood in his way' and prevented timely filing."

6   <u>Holland v. Florida</u>, 560 U.S. 631, 649 (2010) (quoting <u>Pace v. DiGuglielmo</u>, 544

7   U.S. 408, 418 (2005)).  The petitioner "must show that he has been reasonably

8   diligent in pursuing his rights not only while an impediment to filing caused by an

9   extraordinary circumstance existed, but before and after as well, up to the time of

10  filing his claim in federal court."  <u>Smith v. Davis</u>, 953 F.3d 582, 598-99 (9th Cir.

11  2020) (en banc) (rejecting a "stop-clock approach" to equitable tolling).  In other

12  words, "it is not enough for a petitioner seeking an exercise of equitable tolling to

13  attempt diligently to remedy his extraordinary circumstances; when free from the

14  extraordinary circumstance, he must also be diligent in actively pursuing his

15  rights."  <u>Id.</u> at 599.

16      "The diligence required for equitable tolling purposes is reasonable diligence

17  … not maximum feasible diligence," <u>Holland</u>, 560 U.S. at 653 (citations and

18  quotation marks omitted), and courts consider "the petitioner's overall level of care

19  and caution in light of his or her particular circumstances."  <u>Doe v. Busby</u>, 661 F.3d

20  1001, 1013 (9th Cir. 2011); <u>see</u> <u>also</u> <u>Smith</u>, 953 F.3d at 600-01 (emphasizing that

21  the doctrine "does not impose a rigid 'impossibility' standard on litigants,

22  especially not on 'pro se prisoner litigants—who have already faced an unusual

23  obstacle beyond their control during the AEDPA limitation period,'" but noting that

24  it usually "requires the petitioner to work on his petition with some regularity—as

25  permitted by his circumstances—until he files it in the district court") (citation

26  omitted).

27      "[T]he threshold necessary to trigger equitable tolling [under AEDPA] is

28  very high, lest the exceptions swallow the rule."  <u>Miranda v. Castro</u>, 292 F.3d 1063,

1066 (9th Cir.), <u>cert. denied</u>, 537 U.S. 1003 (2002).  Consequently, equitable tolling will be justified in few cases.  <u>Spitsyn v. Moore</u>, 345 F.3d 796, 799 (9th Cir. 2003). "To apply the doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.'"  <u>Waldron-Ramsey v. Pacholke</u>, 556 F.3d 1008, 1011 (9th Cir. 2009).

The burden of demonstrating that AEDPA's one-year limitation period was sufficiently tolled, whether statutorily or equitably, rests with the petitioner.  <u>See</u>, <u>e.g.</u>, <u>Pace</u>, 544 U.S. at 418 ; <u>Banjo v. Ayers</u>, 614 F.3d 964, 967 (9th Cir. 2010); <u>Gaston v. Palmer</u>, 417 F.3d 1030, 1034 (9th Cir. 2005) (as amended); <u>Miranda</u>, 292 F.3d at 1065.

Petitioner may be entitled to equitable tolling on the grounds that conflict counsel, Michael Molfetta, at first failed to provide him with any portion of his file. Per judicial findings of fact made after the trial in which Plaintiff sued Molfetta for this failure, Molfetta appears to have provided the relevant portions of the file to Petitioner in August 2016.  (Pet. at 127-28 [finding that, in August 2016, "Molfetta provided [Petitioner] the entire contents of the case file in his possession" except for a CD containing rape exam photos, which Petitioner stated he did not need]; <u>but see id.</u> at 69 [September 2018 habeas petition filed in the California Supreme Court, admitting that in August 2019 he received "investigators' reports and other relevant discovery solely from the prosecution"; but complaining that "there were no defense investigator interviews, notes, transcripts or documents," which Petitioner was "still engaged in civil litigation with Mr. Molfetta ... to obtain"].)    Yet Petitioner did not file his first habeas petition in state court until March 2018, almost two years later.  (<u>Id.</u> at 10-11, 23-31.)

At present, Petitioner has not sufficiently shown that Molfetta's belated

disclosure of the trial file actually caused him to file belatedly.  See Smith, 953 F.3d at 588, 591 (rejecting argument that "the only diligence required of one seeking equitable tolling is diligence in remedying the impediment to filing caused by the extraordinary circumstance" and holding that the petitioner must show that "he has been diligently pursuing his rights up until the time he did file his petition").  In response to this OSC, Petitioner should explain why he believes he was diligent in seeking habeas relief after he received the records from Molfetta in August 2016.

**D.**     **Actual Innocence.**

Under Schlup v. Delo, 513 U.S. 298 (1995), "a credible claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petitioner who makes such a showing may pass through the Schlup gateway and have his otherwise time-barred claims heard on the merits."  Lee v. Lampert, 653 F.3d 929, 932 (9th Cir. 2011).  The Schlup equitable exception is different than the delayed-start-date provision for new evidence in § 2244(d)(1)(D), discussed above.  Section "2244(d)(1)(D) is both modestly more stringent (because it requires diligence) and dramatically less stringent (because it requires no showing of innocence)."  McQuiggin, 569 U.S. at 395.

However, "[i]n order to present otherwise time-barred claims to a federal habeas court under Schlup, a petitioner must produce sufficient proof of his actual innocence to bring him within the narrow class of cases … implicating a fundamental miscarriage of justice."  Lee, 653 F.3d at 937 (internal quotation marks and citations omitted).  While a petitioner is not required to proffer evidence creating an "absolute certainty" about his innocence, the Schlup gateway is an "exacting standard" that permits review only in the "extraordinary case."  Id. at 938; see also House v. Bell, 547 U.S. 518, 538 (2006) ("[I]t bears repeating that the Schlup standard is demanding and permits review only in the 'extraordinary' case.").

1        Specifically, a petitioner must show "that it is more likely than not that no

2   reasonable juror would have convicted him in light of the new evidence." <u>Lee</u>, 653

3   F.3d at 938 (quoting <u>Schlup</u>, 513 U.S. at 327). The petitioner must support his

4   allegations "with new reliable evidence—whether it be exculpatory scientific

5   evidence, trustworthy eyewitness accounts, or critical physical evidence—that was

6   not presented at trial." <u>Lee</u>, 653 F.3d at 938 (quoting <u>Schlup</u>, 513 U.S. at 324;

7   emphasis added). "[U]njustifiable delay on a habeas petitioner's part," while not

8   "an absolute barrier to relief," is "a factor in determining whether actual innocence

9   has been reliably shown." <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 387 (2013).

10        In unexhausted Ground Eight, Petitioner appears to raise a claim of actual

11   innocence as to at least one of the charges of which was convicted, based on newly

12   discovered evidence from witness Lawrence Holland. (Pet. at 3, 7, 13.) As

13   discussed above, however, it is unclear what Mr. Holland would say or what charge

14   Petitioner would use his testimony to challenge.

15        The other claims raised by Petitioner do not appear to be true claims of actual

16   innocence under <u>Schlup</u>. In exhausted Ground Three, he argues that there is "newly

17   discovered evidence" that he is "actually innocent" of the attacks on Jennifer D. and

18   Sarah L. (<u>Id.</u> at 13, 36, 68, 90.) In supporting this argument, however, Petitioner

19   cites to testimony in the trial record, not new evidence. (<u>Id.</u>) <u>See Lee</u>, 653 F.3d at

20   938 (holding that a <u>Schlup</u> claim must rely on evidence "that was not presented at

21   trial").

22        To the extent Petitioner cites new evidence allegedly showing that his trial

23   counsel was ineffective, that the prosecution did not disclose exculpatory evidence,

24   or that a study published in 2018 about the effect of alcohol on memory impeaches

25   witness testimony (as discussed above in records to section 2244(d)(1)(B)), this

26   does not appear to be new, reliable evidence of Petitioner's actual innocence.

27

28

**IV.**

**CONCLUSION**

IT IS THEREFORE ORDERED that, on or before **June 22, 2020**, Petitioner show cause in writing, if any he has, why the Court should not recommend that this action be dismissed with prejudice on the ground of untimeliness.

The Court notes that, if Petitioner is able to do so, it would be helpful to enclose a copy of the exhaustion petition that he recently filed in the California Court of Appeal.  This would likely aid the Court in understanding his unexhausted claims and the nature of the newly discovered evidence.

DATED: May 21, 2020                          _Karen E. Scott_

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE