1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10

11   SEKAYI RUDO WHITE,                    Case No. 8:20-CV-00814 JLS (KES)
12                    Petitioner,
13        v.                               FINAL REPORT AND
                                           RECOMMENDATION OF UNITED
14   PATRICK COVELLO, Warden,              STATES MAGISTRATE JUDGE
15                    Respondent.
16
17
18        This Final Report and Recommendation ("R&R") is submitted to the
19   Honorable Josephine L. Staton, United States District Judge, pursuant to the
20   provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District
21   Court for the Central District of California.[1]

22                                   **I.**
23                           **INTRODUCTION**
24        On April 21, 2020, Sekayi Rudo White ("Petitioner") constructively filed a
25   Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28

26   ─────────────────
27        [1] Because this Final R&R is issued only to respond to Petitioner's objections
     to the initial R&R (Dkt. 26) and the recommendations remain unchanged, a second
28   objections period is not warranted.

U.S.C. § 2254 ("Petition").  (Dkt. 1.)[2]  Petitioner "was sentenced to life in prison after committing multiple sex crimes against multiple victims."  <u>People v. Sekayi Rudo White</u>, No. G047252, 2013 Cal. App. Unpub. LEXIS 9408, at *1, 2013 WL 6858191, at *1 (Dec. 30, 2013).  Petitioner also filed a motion for stay and abeyance under <u>Rhines v. Weber</u>, 544 U.S. 269 (2005), to exhaust certain claims in state court.  (Pet. at 3–8; <u>see</u> Dkt. 2.[3])

In May 2020, the Court issued an Order to Show Cause ("OSC") why the Petition should not be dismissed as untimely.  (Dkt. 7.)  Petitioner filed a lengthy response to the OSC, exceeding 700 pages including exhibits.  (Dkt. 8.)  To obtain the benefit of briefing, the Court discharged the OSC and ordered Respondent to respond.  (Dkt. 9.)

In August 2020, Respondent moved to dismiss the Petition as untimely and partially unexhausted.  (Dkt. 14.)  Respondent also argued that Petitioner is not entitled to a stay.  (<u>Id.</u>)  In August and September 2020, Respondent lodged documents ("LD") from Petitioner's state proceedings, including the Clerk's Transcript ("CT") and the Reporter's Transcript ("RT").  (Dkt. 15, 20.)  In August, Petitioner filed an opposition and a request for judicial notice.  (Dkt. 16, 17.)  In September 2020, Respondent filed a reply and a response to Petitioner's request for judicial notice.  (Dkt. 19, 21.)

---

[2] April 21, 2020, is the date Petitioner signed the Petition and the date on the Petition's proof of service.  (Pet. at 15, 134.)  The Court assumes, for purposes of this Final Report and Recommendation, that Petitioner is entitled to the benefit of the prison mailbox rule, under which "a prisoner's <u>pro se</u> habeas petition is deemed filed when he hands it over to prison authorities for mailing to the relevant court."  <u>Campbell v. Henry</u>, 614 F.3d 1056, 1058–59 (9th Cir. 2010) (citation omitted); <u>see also</u> <u>Butler v. Long</u>, 752 F.3d 1177, 1178 n.1 (9th Cir. 2014) (noting that, in the absence of other evidence, courts generally deem a habeas petition filed on the day it is signed).  However, because the Petition is untimely, as discussed herein, Petitioner is not entitled to the benefits of the mailbox rule.

[3] Except for the Reporter's Transcript and the Clerk's Transcript, citations refer to the pagination imposed by the Court's e-filing system.

2

1    On October 15, 2020, the Court issued its initial R&R.  (Dkt. 24.)  On

2    November 6, 2020, Petitioner filed Objections to the initial R&R.  (Dkt. 26.)  He

3    also filed a motion for discovery and a request for a certificate of appealability.

4    (Dkt. 25, 27.)

5    For the reasons set forth below, the Court finds that Respondent's motion

6    should be GRANTED and the Petition should be dismissed as untimely.

7    ## II.

8    ## PROCEDURAL HISTORY

9    **A.    Conviction and Direct Appeal.**

10   On February 2, 2011, in Orange County Superior Court case no. 06HF2048,

11   a jury found Petitioner guilty of six counts of forcible rape, two counts of first

12   degree residential burglary, two counts of criminal threats, one count of attempted

13   forcible rape, one count of assault with intent to commit a sexual assault, one count

14   of sexual battery by restraint, and one count of dissuading a witness.  (LD 1.)  On

15   June 22, 2012, he was sentenced to an indeterminate term of 112 years to life in

16   prison.  (Id.)

17   Petitioner appealed his convictions and sentence (case no. G047252), arguing

18   that "instructional error tainted the jury's verdict, and one of his convictions must

19   be reversed due to insufficient evidence."  (LD 4 at 2.)  Specifically, he argued

20   there was "insufficient evidence to support the jury's verdict he raped Sarah the

21   first time they had sex," as alleged in count eight.  (Id. at 2 n.1 & 3.)  On December

22   30, 2013, the California Court of Appeal affirmed the judgment.  (Id. at 5.)  On

23   February 18, 2014, Petitioner filed a petition for review in the California Supreme

24   Court (case no. S216465), which was summarily denied on March 19, 2014.  (LD

25   5, 6.)  Plaintiff did not file a petition for writ of certiorari in the U.S. Supreme

26   Court.  (Pet. at 12.)

27

28

**B.**   **Receipt of the Trial Record and Case File.**

In April 2014, Petitioner's appellate counsel David A. Morse "mailed Petitioner all case file material in his possession, which consisted only of the CT and RT transcripts of Petitioner's trial proceedings" and did not include "any of the pre-trial discovery, investigator reports, or any other evidentiary documents." (Pet. at 69, 91.)

In March 2015, Petitioner filed a pro se civil complaint for conversion and intentional infliction of emotional distress against Michael Molfetta, an attorney who was appointed to represent Petitioner in the Superior Court after his conviction through his sentencing and filing a notice of appeal. (Id. at 123, 126.) Petitioner alleged that "Molfetta failed to provide [him] with access to (or a copy of) the entire contents of his criminal case file in response to [his] written requests." (Pet. at 123.) In August 2016, with only two exceptions, Molfetta provided Petitioner with the entire copy of the case file in his possession.[4] (Pet. at 35, 69, 127–28.) In June 2019, a bench trial was held in Plaintiff's civil action against Molfetta.[5] (Pet. at 124.) During the trial, Frederick L. McBride, Petitioner's counsel at his criminal trial, "admitted under oath that he conducted absolutely no investigation in Petitioner's case and further admitted that he did not interview any witnesses that testified at Petitioner's trial before trial." (Pet. at 7.) On August 1, 2019, the

---

[4] "Because of the protective order entered by the court in [Petitioner's] criminal case and the extremely private and sensitive nature of the documents contained on two compact discs ('CDs') in the file, Molfetta withheld the two CDs from the materials he provided to [Petitioner]." (Pet. at 127.) Petitioner did not object to Molfetta retaining these two CDs, which contained rape examination photographs. (Id. at 127–28 & n.6.)

[5] On November 12, 2020, Petitioner filed a "Correction of Error" and "Amended and Revised" objections, which noted that in his Objections, Petitioner inadvertently referred to the Molfetta civil trial as having taken place in 2018. (Dkt. 28, 29).

4

Superior Court issued an order with detailed factual findings and entered judgment in favor of Molfetta.[6]  (Pet. at 123–33.)

**C.      First Round of Habeas Petitions in the State Courts.[7]**

On March 29, 2018, Petitioner filed a habeas petition in Orange County Superior Court (case no. M-17467), which was denied in a written opinion on May 17, 2018.  (LD 7, 8.)  On June 19, 2018, Petitioner filed a habeas petition in the California Court of Appeal (case no. G056454), which was summarily denied on August 16, 2018.  (LD 9–12.)  On September 4, 2018, Petitioner filed a habeas petition in the California Supreme Court (case no. S251181), which was summarily denied on February 13, 2019.  (LD 13, 14.)

**D.      Second Round of Habeas Petitions in the State Courts.**

On May 1, 2020, Petitioner filed a habeas petition in the California Court of Appeal (case no. G059047), which was summarily denied on July 29, 2020.  (LD 15, 17–19.)  On September 21, 2020, Petitioner filed a habeas petition in the

---

[6] Petitioner requests that the Court take judicial notice of the "Certified Settled Statement" in the Molfetta case.  (Dkt. 17.)  It appears that Petitioner is referring to the Superior Court's "Order Correcting and Modifying Appellant's Proposed Settled Statement," which the Superior Court "certified" on February 3, 2020.  (Dkt. 8 at 183–92.)  In his Objections, Petitioner clarifies that he "sought judicial notice of the full [Molfetta] case record specifically to give this Court context in relation to the diligence of his pursuit."  (Dkt. 26 at 4.)  Petitioner's request is granted in part.  While a court may take judicial notice of the *existence* of matters of public record, such as a prior order or decision, it should not take notice of the *truth* of the facts cited therein.  Wyatt v. Terhune, 315 F.3d 1108, 1114 & n.5 (9th Cir. 2003), overruled on other grounds by Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014).  Nevertheless, the facts that are the subject of Petitioner's request for judicial notice do not alter the Court's analysis, as discussed herein.

[7] The present federal Petition challenges Petitioner's convictions in Orange County Superior Court case no. 06HF2048.  (Pet. at 2, 9.)  Petitioner also filed state habeas petitions related to state court case no. 30-2015-000777735.  This Final Report and Recommendation lists only those state petitions that appear related to the conviction Petitioner is presently challenging in these federal proceedings.

California Supreme Court (case no. S264589), which as of November 16, 2020, remains pending.  See https://appellatecases.court info.ca.gov.[8]

### III.

### PETITIONER'S CLAIMS

Petitioner is raising eleven claims, six of which were exhausted in Petitioner's first round of state habeas petitions and five of which are the subject of his ongoing, second round of state habeas proceedings.  (Pet. at 2.)

Liberally construing the Petition, the Court understands the exhausted claims to be as follows:

Ground One:     The Superior Court erred by denying Petitioner's first state habeas petition, which raised the claims identified below as Grounds Two through Six.  (Pet. at 12, 51–68.)

Ground Two:     Ineffective assistance of counsel ("IAC") by appellate counsel for failing to (a) obtain Petitioner's complete trial record, and (b) raise multiple "winning" arguments on appeal.  (Id. at 12, 35–36, 69–81.)

Ground Three:   There is "newly discovered evidence" that Petitioner is "actually innocent" of the attacks on Jennifer D. and Sarah L.  (Id. at 13, 36–38, 82–95.)

Ground Four:    Petitioner's right to counsel under Miranda v. Arizona, 384 U.S. 436 (1966) was violated during a custodial interrogation conducted while he was intoxicated.  (Id. at 13, 38, 96–101.)

Ground Five:    Petitioner's rights under Brady v. Maryland, 373 U.S. 83 (1963), were violated by the state's failure to provide exculpatory material about "the cover up investigation of pedophile officer"

---

[8] The Court takes judicial notice of the public records of the California appellate courts.  See Fed. R. Evid. 201(b)(2); Harris v. Cty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012).

1    Gerald Stenger, which could have been used at trial to impeach

2    prosecution witness Myrna Caballero.  (<u>Id.</u> at 13, 39–41, 102–

3    11.)

4  Ground Six:    Petitioner was denied his right to counsel and due process by

5    conflicts of interest and delays.  (<u>Id.</u> at 13, 41–42, 112–14.)

6    Liberally construing the Petition and reviewing the pending habeas petition

7  in the state courts, which is attached to Petitioner's response to the OSC (Dkt. 8 at

8  55–160), the Court understands the unexhausted claims to be as follows:

9  Ground Seven:    IAC of trial counsel for failing to investigate; and IAC of

10    conflict trial counsel and appellate counsel for failing to raise

11    this issue.  (Pet. at 2; Dkt. 8 at 95–110.)

12  Ground Eight:    Newly discovered evidence shows Petitioner is actually innocent

13    of the attacks on Sarah L. and Latisha B.  (Pet. at 3; Dkt. 8 at

14    111–19.)

15  Ground Nine:    "Newly discovered evidence proves prosecutorial misconduct

16    for withholding impeachment evidence of the State's star

17    government witness and withholding exculpatory exonerating

18    scientific/technological evidence of Petitioner's actual

19    innocence."  (Pet. at 3; Dkt. 8 at 120–33.)

20  Ground Ten:    New scientific evidence about the effect of alcohol on memory

21    shows that false testimony was given at Petitioner's trial.  (Pet.

22    at 3; Dkt. 8 at 134–58.)

23  Ground Eleven:    Cumulative error.  (Pet. at 3; Dkt. 8 at 160.)

24    **IV.**

25    **DISCUSSION**

26    Because Petitioner is not entitled to a <u>Rhines</u> stay if his Petition is untimely,

27  the Court exercises its discretion to consider the timeliness of Petitioner's claims

28  before considering his request for a stay.  See <u>King v. Frauenheim</u>, No. 14-cv-

7

05267, 2016 U.S. Dist. LEXIS 20634, at *20, 2016 WL 687867, at *6 (N.D. Cal. Feb. 19, 2016) ("<u>Rhines</u> does not allow a petitioner to revive a time-barred claim."); <u>cf.</u> <u>Mena v. Long</u>, 813 F.3d 907, 908 (9th Cir. 2016) ("The Supreme Court held in <u>Rhines</u> that a district court has discretion to stay, rather than dismiss, a *timely-filed* 'mixed' petition ….") (emphasis added).

**A.      Running of the One-Year Statute of Limitations.**

This action is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (**A**) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (**B**) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (**C**) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (**D**) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Thus, AEDPA "establishes a 1-year time limitation for a state prisoner to file a federal habeas corpus petition." <u>Jimenez v. Quarterman</u>, 555 U.S. 113, 114

(2009).  The statute of limitations period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  "[F]or a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' [for purposes of § 2244(d)(1)(A)] on the date that the time for seeking such review expires."  Gonzalez v. Thaler, 565 U.S. 134, 137 (2012).  In contrast, where a state defendant seeks direct review in a state's highest court, the judgment becomes final when time for seeking certiorari review in the U.S. Supreme Court expires.  See Jimenez, 555 U.S. at 120.  This is because the U.S. Supreme Court has jurisdiction over final decisions of the highest state court "in which a decision could be had" respecting a constitutional right or other federal law.  28 U.S.C. § 1257(a).  To appeal to the U.S. Supreme Court, a petition for writ of certiorari must be filed within 90 days after entry of the state court judgment.  U.S. Sup. Ct. R. 13(1).

### 1.    Date Conviction Became Final Under § 2244(d)(1)(A).

Petitioner's conviction became final 90 days after the California Supreme Court denied review ***on direct appeal***, i.e., March 19, 2014 + 90 days = July 17, 2014.  (LD 6.)  Petitioner's suggestion that his one-year AEDPA clock only began to run when the California Supreme Court denied his petition for writ of habeas corpus (Pet. at 3–4) is incorrect.  And whether the state courts found his habeas petitions timely (Dkt. 8 at 3–4) is immaterial to AEDPA's 1-year statute of limitations under § 2244(d)(1)(A).[9]  If the AEDPA clock began running when Petitioner's conviction became final under § 2244(d)(1)(A), then the deadline expired on July 17, 2015 (absent an alternative start date or tolling of some kind).

---

[9] On the other hand, when considering whether "gap tolling" under § 2244(d)(2) is applicable during the period between the denial of one state habeas petition and the filing of another, at least where a petitioner is pursuing state habeas corpus relief in ascending courts, a federal court may consider the California Supreme Court's apparent consideration of a petition on the merits.  Maxwell v. Roe, 628 F.3d 486, 496 (9th Cir. 2010); see also infra § IV.B.

Petitioner did not file his federal Petition until almost six years later, on April 21, 2020.

### 2.    State-Created Impediment Under § 2244(d)(1)(B).

Petitioner argues that the failure of his appointed defense counsel to provide him the file from his criminal case was a "state-created impediment" to his filing a federal habeas petition, which means that "pursuant to 28 U.S.C. § 2244(d)(1)(B) Petitioner's 1-year clock began to run on February 13, 2019," i.e., the date his first round of habeas petitions in the state courts was completed.  (Pet. at 4; see also Dkt. 8 at 4–5 (arguing that public defenders and appointed counsel act under color of state law when conveying case file materials after representation).)  Petitioner contends that the California Supreme Court "understand[s] that an attorney not returning a client case file would preclude a Petitioner from filing a timely petition which is why they chose not to procedurally deny [his September 2018 habeas petition]."  (Dkt. 8 at 5.)  However, federal law applies here, and district courts in this circuit consistently hold that the "actions or omissions of Petitioner's counsel are not attributable to the state" under § 2244(d)(1)(B), even if counsel was appointed.  Favela v. Madden, No. CV 16-8896-JAK(E), 2017 WL 1449228, at *4, 2017 U.S. Dist. LEXIS 61230, at *8 (C.D. Cal. Mar. 15, 2017) (collecting cases), report and recommendation adopted, No. CV 16-08896-JAK(E), 2017 WL 1439664, 2017 U.S. Dist. LEXIS 61226 (C.D. Cal. Apr. 21, 2017) ; see Stewart v. McComber, No. 14-cv-01747-DSF-DFM, 2014 U.S. Dist. LEXIS 77626, at *6, 2014 WL 2510927, at *2 (C.D. Cal. Apr. 25, 2014) (reasoning that "Petitioner's counsel was not acting on behalf of the state; rather, Petitioner's counsel represented Petitioner personally"), report and recommendation adopted, 2014 U.S. Dist. LEXIS 77622, 2014 WL 2511216 (C.D. Cal. June 4, 2014); see also Lawrence v. Fla., 421 F.3d 1221, 1226 (11th Cir. 2005), aff'd, 549 U.S. 327 (2007) (ruling that even if the state provided petitioner with incompetent counsel, "[t]his is not the type of State impediment envisioned in § 2244(d)(1)(B)").  See generally

10

Polk Cty. v. Dodson, 454 U.S. 312, 324–25 (1981) (holding that public defenders generally do not act under color of law for purposes of civil rights claims under 42 U.S.C. § 1983).

Here, Plaintiff has not demonstrated any unlawful impediment by the State of California that directly caused his failure to file a timely federal habeas petition. See Bryant v. Arizona Atty. Gen., 499 F.3d 1056, 1060 (9th Cir. 2007) ("To obtain relief under § 2244(d)(1)(B), the petitioner must show a causal connection between the unlawful impediment and his failure to file a timely habeas petition."); see also Randle v. Crawford, 604 F.3d 1047, 1055 (9th Cir. 2010) (finding no "causal connection between [the petitioner's] state-appointed counsel's failure to perfect a direct appeal timely and [the petitioner's] own failure to file his federal habeas petition timely"). Thus, Petitioner has not shown that he is entitled to an alternative start date under § 2244(d)(1)(B) based on a state-created impediment to filing.

### 3. Newly Discovered Evidence Under § 2244(d)(1)(D).

Petitioner cites several pieces of "newly discovered evidence," which he contends entitle him to a later start date for AEDPA's statute of limitations. (Pet. at 4–8; Dkt. 8 at 6–10.) "The statute of limitations begins to run under § 2244(d)(1)(D) when the factual predicate of a claim 'could have been discovered through the exercise of due diligence,' not when it actually was discovered." Ford v. Gonzalez, 683 F.3d 1230, 1235 (9th Cir. 2012). "Due diligence does not require the maximum feasible diligence, but it does require reasonable diligence in the circumstances." Id. (citation omitted). The limitations period begins to run "when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (citation omitted). Further, due diligence requires that a petitioner "at least consult his own memory of the trial proceedings." United States v. Battles, 362 F.3d 1195, 1198 (9th Cir. 2004).

a. Evidence from Molfetta Civil Trial Regarding Lack of

Investigation by Former Counsel McBride.

Petitioner asserts that during the June 2019 bench trial on his civil claims against Molfetta, former defense trial counsel McBride "admitted under oath that he conducted absolutely no investigation in Petitioner's case and further admitted that he did not interview any witnesses that testified at Petitioner's trial before trial." (Pet. at 7; see Dkt. 8 at 6–8.)  In unexhausted Ground Seven, Petitioner contends that McBride should have interviewed 51 witnesses, including alibi witnesses like Guillian Contreras, DeAllesandro Lamar, Lawrence Holland, Mason Webb, and others, and investigated potential DNA evidence contamination.  (Dkt. 8 at 7; see id. at 98–103.)  Even if Petitioner's allegations are accurate,[10] Petitioner clearly knew about these alibi witnesses long before the Molfetta civil trial.  Indeed, it is not the lack of an investigation which could have prejudiced Petitioner at his criminal trial; instead, it is the beneficial information that the investigation could have uncovered that could have demonstrated prejudice.  See Hasan, 254 F.3d at 1154 ("to have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both unreasonable performance and resulting prejudice").  With due diligence, Petitioner could have discovered what material evidence these witnesses had many years ago; he did not need to wait to determine whether his trial counsel did or did not investigate them.

---

[10] The Molfetta civil trial was conducted without a court reporter, and McBride's recollection of his testimony was different than Petitioner's.  (Pet. at 124; Dkt. 8 at 261–62.)  Further, the trial court struck portions of Petitioner's narrative of McBride's trial testimony as "inaccurate and/or misleading."  (Dkt. 8 at 188–89, 196.)  In his Objections, Petitioner emphasizes the trial court found that "McBride does not recall conducting any further investigation after he got the case from [prior counsel] Davis."  (Dkt. 26 at 4; see Dkt. 8 at 188.)  Nevertheless, Petitioner did not exercise due diligence, as discussed herein.

1    In support of his contention that McBride should have investigated potential

2    DNA contamination, Petitioner cites to the Clerk's Transcript from his criminal

3    trial.  (Dkt. 8 at 7, 88, 270.)  But Petitioner received a copy of the Clerk's

4    Transcript and Reporter's Transcript in April 2014, and with due diligence, he

5    could have investigated or raised this issue shortly thereafter.  (Pet. at 69, 91.)

6    Moreover, Petitioner has asserted for some time that, in his opinion, McBride had

7    not sufficiently investigated his claims.  For example, he successfully petitioned the

8    trial court in 2011 to discharge McBride because of the lack of investigation,

9    claiming McBride had provided ineffective assistance of counsel.  (Pet. at 112–13;

10   see id. at 125–26.)  Thus, Petitioner could have long ago raised his Ground Seven

11   ineffective assistance of counsel claim against McBride and against later counsel

12   for failing "to discover and present McBride's failure in the new trial motion or on

13   appeal."  (Pet. at 2.)

14          b.     Evidence from Molfetta Civil Trial Regarding Brady Claim.

15          In exhausted Ground Five, Petitioner argues that his Brady rights were

16   violated because certain impeachment evidence was only belatedly provided to

17   defense counsel McBride near the end of the trial.  (Pet. at 13, 39–41, 102–11.)

18   This evidence concerned Investigator Myrna Caballero and Deputy District

19   Attorney Anthony Ferrentino's involvement in an alleged "cover-up" during an

20   unrelated investigation into allegations of child molestation against another officer,

21   Gerald Stenger.  (Id.)  Petitioner complains that the defense "was never given and

22   still does not have a copy of phone messages Inv. Caballero left to suspect

23   Stenger"; instead, he alleged, the defense was only given "a paper xerox photocopy

24   of the actual CD-ROM."  (Pet. at 103.)  He argues, based on a summary of the

25   phone messages in a letter, that the messages show a "definite tone of familiarity"

26   between Caballero and Stenger, and if he had "been given this information at trial

27   he would have been able to call Inv. Caballero and DDA Ferrentino to testify and

28

13

1    expose that they both have worked together before, committing 'crimes against

2    justice' and of moral turpitude to subvert the law."  (Pet. at 103–04.)

3         Unexhausted Ground Nine appears to raise a similar claim: "prosecutorial

4    misconduct for withholding impeachment evidence of the state's star government

5    witness," Inv. Caballero.  (Pet. at 3; Dkt. 8 at 120–33.)  Petitioner alleges that, at

6    the June 2019 civil trial against Molfetta, he discovered the following evidence:

7         McBride ... confirmed that he did not remember signing for

8         exculpatory impeachment evidence that Petitioner alleges the

9         Prosecution withheld.  [T]he [f]ormer prosecutor in Petitioner's case,

10        DDA Anthony Ferrentino[,] testified that <u>Brady</u> discovery arose during

11        trial but was unrelated to discovery that Petitioner cited incorrectly in

12        his initial petition.  Ferrentino also provided withheld exculpatory

13        <u>Brady</u> evidence in the form of a CD-ROM regarding a corrupt

14        investigator, Myrna Caballero[,] who was the state[']s star government

15        witness in Petitioner[']s case.  Ferrentino also provided forged Brady

16        receipts citing that he had turned over the Caballero CD-ROM before

17        Petitioner's trial.

18   (Pet. at 7.)  Thus, Petitioner contends that the defense never received <u>Brady</u>

19   information that Caballero "was willing to manipulate investigations to cover up

20   the crimes of [Stenger]."  (Dkt. 8 at 122–23.)  "This information coupled with the

21   fact that [Ferrentino] was implicated in the cover up also, would have been legal

22   credibility dynamite.  This information would have killed the Prosecution[']s

23   credibility, the credibility of the investigation of the case, and the case in chief."

24   (Dkt. 8 at 123.)  However, even if Petitioner's allegations are accurate,[11] he had

25   ───────────────

26        [11] At Molfetta's civil trial, Ferrentino and McBride merely testified that they
     had no specific recollection of the Caballero <u>Brady</u> materials being given to defense
27   counsel, not that they were in fact not turned over.  (Dkt. 8 at 189, 190.)  Further,
     Petitioner's contention that McBride's signature was "forged" is mere speculation.
28   Petitioner contends that McBride's signature must have been forged because his

evidence of Caballero's and Ferrentino's alleged corruption long before the Molfetta civil trial.  For example, Petitioner references a September 2008 newspaper article, which described Caballero's and Ferrentino's apparent cover-up of the child molestation claims against Stenger.[12]  (Dkt. 8 at 312–16.)  And the Caballero Brady materials were included in the documents provided to Petitioner by Molfetta in August 2016.  (Dkt. 8 at 514–601.)  Thus, regardless whether the Brady materials were turned over to defense counsel prior to trial, Petitioner was aware of their nature by no later than August 2016, and the revelations at the Molfetta civil trial do not constitute new evidence revealing the factual basis of any claims.

> c.   Evidence from Lawrence Holland.

In unexhausted Ground Eight, Petitioner asserts that he has "newly discovered exonerating evidence [which] proves that [he] is actually and factually

---

receipt for the Brady materials is dated April 22, 2009, and the District Attorney did not order them turned over until October 13, 2010.  (Dkt. 26 at 10.  Compare Dkt. 8 at 517, with id. at 265.)  But the District Attorney's October 2010 memorandum was not particular to Petitioner's case (Dkt. 8 at 517) and thus does not prove that the April 2009 receipt was forged.

[12] Petitioner contends he was not aware of this article until February 2020. (Dkt. 26 at 10.)  But he offers no credible argument why it took him over eleven years to discover an article that was published more than two years *prior* to his trial. See Cooper v. Montgomery, No. CV 15-8683 JFW (SS), 2016 WL 5899292, at *3, 2016 U.S. Dist. LEXIS 140018, at *8 (C.D. Cal. Sept. 6, 2016), report and recommendation adopted as modified sub nom. Keshon Bernard Cooper v. Montgomery, No. CV 15-8683 JFW (SS), 2016 WL 5897757, 2016 U.S. Dist. LEXIS 140010 (C.D. Cal. Oct. 5, 2016) ("Moreover, the newspaper articles Petitioner cites indicating that Officer McMahan was under examination provide no basis for application of a later start date under § 2244(d)(1)(D).  The articles from the Associated Press and Los Angeles Times were published on December 10, 1992, well before Petitioner's trial, and were clearly discoverable with the exercise of reasonable diligence."); Rivas v. Fischer, 687 F.3d 514, 536 (2d Cir. 2012) (rejecting argument that "new evidence" that medical examiner was under investigation entitled petitioner to a later start date under § 2244(d)(1)(D) since the "new evidence" consisted of newspaper articles that predated his trial and were certainly discoverable with the exercise of due diligence).

innocent of the February 21, 2007 attack of Sarah [L.]"  (Pet. at 3.)  Holland

executed a declaration on February 3, 2020, which indicated that he was with

Petitioner on February 21, 2007, from 11:00 a.m. to 1:30 p.m.  (Dkt. 8 at 235.)

Petitioner contends that "[t]his evidence could not have been discovered within the

AEDPA limitation period because Petitioner was incarcerated and could not

investigate himself physically."  (Dkt. 8 at 9.)  However, from his own memory,

Petitioner would be aware of this witness and what evidence he could provide in his

defense at the time of trial.  See Gant v. Barnes, No. CV 14-2618-CJC (SP), 2017

WL 3822063, at *7, 2017 U.S. Dist. LEXIS 140022, at *16–17 (C.D. Cal. July 19,

2017) ("Petitioner's inability to locate, rather than discover, such witnesses due to

his previous pro se litigant status does not undermine the conclusion that he knew

the factual predicate for his IAC claim by the conclusion of his trial."), report and

recommendation adopted, No. CV 14-2618-CJC (SP), 2017 WL 3738384, 2017

U.S. Dist. LEXIS 140011 (C.D. Cal. Aug. 28, 2017); Evans v. Galaza, No. CV 98-

8536-WDK MLG, 2012 WL 6193859, at *8, 2012 U.S. Dist. LEXIS 177048, at

*24–25 (C.D. Cal. Oct. 2, 2012) ("[H]aving sat through the trial, Petitioner was

clearly aware that the persons who could allegedly establish his alibi were not

called as witnesses."), report and recommendation adopted, No. CV 98-8536-WDK

MLG, 2012 WL 6201209, 2012 U.S. Dist. LEXIS 177059 (C.D. Cal. Dec. 12,

2012); see also Battles, 362 F.3d at 1198 (due diligence requires a petitioner to

consult his memories of the trial proceedings).  Taking over ten years to obtain a

declaration from Holland does not demonstrate due diligence.  See Flanagan v.

Johnson, 154 F.3d 196, 199 (5th Cir. 1998) ("[The petitioner] is confusing his

knowledge of the factual predicate of his claim with the time permitted for

gathering evidence in support of that claim.").  Petitioner fails to describe with any

specificity his attempts to locate Holland and the "extraordinary circumstances"

which prevented him from timely securing the Holland declaration.  Cf. Bills v.

Clark, 628 F.3d 1092, 1097 (9th Cir. 2010) ("equitable tolling is available … only

16

when extraordinary circumstances beyond a prisoner's control make it *impossible* to file a petition on time and the extraordinary circumstances were the *cause* of the prisoner's untimeliness") (citation omitted).  Thus, Petitioner is not entitled to a later start date for Ground Eight.

> d.   New Study About the Effects of Alcohol on Memory Loss.

In unexhausted Ground Ten, Petitioner alleges "that newly discovered scientific evidence proves that false expert testimony and false witness testimony was given to Petitioner's jury."  (Pet. at 3; see Dkt. 8 at 134–58.)  He cites an August 2018 study by Aaron White, Ph.D., which indicated that as the result of "extreme binge drinking," memories lost in an alcohol-induced blackout "will never come back, because the information wasn't stored in the first place."  (Dkt. 8 at 237.)  Thus, Petitioner contends that this "newly discovered evidence establishes that it was Scientifically Impossible[ ] for several complaining witnesses in this case[, including victim Latisha B.,] to testify to facts that could not have been remembered due to Alcohol Induced Blackouts."  (Id. at 134–35.)  Petitioner requests an evidentiary hearing to allow Dr. White to testify as an expert witness.  (Id. at 10.)

While Ground Ten may rely on Dr. White's study, the study does not qualify as the "factual predicate" for Petitioner's false witness testimony claim.  Instead, the factual predicate was their alleged false testimony, of which Petitioner was aware at the time of trial.  See Shannon v. Newland, 410 F.3d 1083, 1088–89 (9th Cir. 2005) (distinguishing between discovery of legal clarification and discovery of factual predicate); Hasan, 254 F.3d at 1154 n.3 (the factual predicate is the facts, not the legal significance of those facts); see also McAuley v. Ryan, No. CV-14-01756, 2015 WL 4594521, at *2, 2015 U.S. Dist. LEXIS 99702, at *5 (D. Ariz. July 30, 2015) ("[t]he [National Academy of Sciences] report does not qualify as the 'factual predicate' of [Petitioner's] new claim.  Rather, the factual predicate of Petitioner's claim is the fiber, tire track, and shoe print evidence, which Petitioner

17

was aware of at the time of trial.").  While Petitioner argues that it is the unreliability of the witnesses' testimony that is the predicate of his claim, Dr. White's study was not key to discovering that fact.  Petitioner contends he is not guilty of the assault on Latisha B. and that her testimony was therefore unreliable because of alcohol-induced blackouts.  (Dkt. 8 at 135–36.)  But because Latisha B.'s testimony would have conflicted with his recollection of the events that occurred, the testimony's unreliability would have been evident to Petitioner at his trial.  Moreover, defense counsel amply cross-examined Latisha B. on the amount of alcohol she consumed on the night of the assault, and she acknowledged she was "drunk," had "too much to drink," and needed to "throw up."  (RT 185-86, 188–89, 200–01.)  A forensic toxicologist—who testified as a *defense* expert—estimated that Latisha B.'s blood alcohol level was 0.19 during the time of the assault and opined that alcohol impairs memory storage and recall.[13]  (RT 712, 714, 723, 726–28.)  Thus, Dr. White's testimony would be largely duplicative of information already given to Petitioner's jury.  Accordingly, Petitioner has not demonstrated that he is entitled to a later start date for Ground Ten.

### 4.    Summary

In sum, Petitioner has failed to demonstrate any "newly discovered evidence" from the Molfetta civil trial, the Holland declaration, or the Dr. White study that entitles him to a later start date under § 2244(d)(1)(D).  Thus, the AEDPA clock began running under § 2244(d)(1)(A) when Petitioner's conviction became final on July 17, 2014, and, absent statutory or equitable tolling, expired on July 17, 2015.

---

[13] In his Objections, Petitioner contends that Dr. White's study proves that Latisha B.'s testimony was "conclusively false."  (Dkt. 26 at 20.)  But even if Dr. White's study is accurate and alcohol-induced blackouts cause permanent memory loss, there is no evidence that Latisha B.'s acknowledged excessive alcohol consumption resulted in a blackout.

1  **B.**     **Statutory Tolling.**

2          AEDPA provides for statutory tolling, as follows: "The time during which a

3  properly filed application for State post-conviction or other collateral review with

4  respect to the pertinent judgment or claim is pending shall not be counted toward

5  any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).  The

6  United States Supreme Court has interpreted this language to mean that AEDPA's

7  statute of limitations is tolled from the time the first state habeas petition is filed

8  until the California Supreme Court rejects a petitioner's final collateral challenge,

9  so long as the petitioner has not unreasonably delayed during the gaps between

10  sequential filings.  Carey v. Saffold, 536 U.S. 214, 219-21 (2002) (holding that, for

11  purposes of statutory tolling, a California petitioner's application for collateral

12  review remains  pending during the intervals between the time a lower state court

13  denies the application and the time the petitioner files a further petition in a higher

14  state court).  However, statutory tolling "does not permit the reinitiation of the

15  limitations period that has ended before the state petition was filed," even if the

16  state petition was timely filed.  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.

17  2003).  As described above, Petitioner did not file any state habeas petitions until

18  March 2018.  Because these petitions were filed after the expiration of Petitioner's

19  AEDPA deadline, they cannot create statutory tolling.[14]

20  **C.**     **Equitable Tolling.**

21          AEDPA's one-year limitation period is subject to equitable tolling if the

22  petitioner shows: "(1) that he has been pursuing his rights diligently, and (2) that

23  some extraordinary circumstance stood in his way and prevented timely filing."

24  Holland v. Florida, 560 U.S. 631, 649 (2010) (citation omitted).  The petitioner

25  "must show that he has been reasonably diligent in pursuing his rights not only

26  while an impediment to filing caused by an extraordinary circumstance existed, but

27  _____

28          [14] Petitioner does not contend that he is entitled to statutory tolling.

1    before and after as well, up to the time of filing his claim in federal court." <u>Smith</u>

2    <u>v. Davis</u>, 953 F.3d 582, 598–99 (9th Cir. 2020) (en banc) (rejecting a "stop-clock

3    approach" to equitable tolling).  In other words, "it is not enough for a petitioner

4    seeking an exercise of equitable tolling to attempt diligently to remedy his

5    extraordinary circumstances; when free from the extraordinary circumstance, he

6    must also be diligent in actively pursuing his rights." <u>Id.</u> at 599.

7         "The diligence required for equitable tolling purposes is reasonable

8    diligence … not maximum feasible diligence," <u>Holland</u>, 560 U.S. at 653 (citations

9    omitted), and courts consider "the petitioner's overall level of care and caution in

10   light of his or her particular circumstances," <u>Doe v. Busby</u>, 661 F.3d 1001, 1013

11   (9th Cir. 2011); <u>see also</u> <u>Smith</u>, 953 F.3d at 600–01 (emphasizing that the doctrine

12   "does not impose a rigid 'impossibility' standard on litigants, especially not on pro

13   se prisoner litigants—who have already faced an unusual obstacle beyond their

14   control during the AEDPA limitation period," but noting that it usually "requires

15   the petitioner to work on his petition with some regularity—as permitted by his

16   circumstances—until he files it in the district court") (citation omitted).

17        "[T]he threshold necessary to trigger equitable tolling under AEDPA is very

18   high, lest the exceptions swallow the rule." <u>Miranda v. Castro</u>, 292 F.3d 1063,

19   1066 (9th Cir. 2002) (citation omitted).  Consequently, "equitable tolling is justified

20   in few cases." <u>Spitsyn v. Moore</u>, 345 F.3d 796, 799 (9th Cir. 2003).  "To apply the

21   doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity,

22   and the requirement that extraordinary circumstances 'stood in his way' suggests

23   that an external force must cause the untimeliness, rather than, as we have said,

24   merely oversight, miscalculation or negligence on the petitioner's part, all of which

25   would preclude the application of equitable tolling." <u>Waldron-Ramsey v. Pacholke</u>,

26   556 F.3d 1008, 1011 (9th Cir. 2009) (citation omitted).  The burden of

27   demonstrating that AEDPA's one-year limitation period was sufficiently tolled,

28   whether statutorily or equitably, rests with the petitioner.  <u>See</u>, <u>e.g.</u>, <u>Pace</u>, 544 U.S.

1    at 418; <u>Banjo v. Ayers</u>, 614 F.3d 964, 967 (9th Cir. 2010); <u>Gaston v. Palmer</u>, 417

2    F.3d 1030, 1034 (9th Cir. 2005) (as amended); <u>Miranda</u>, 292 F.3d at 1065.

3           Petitioner contends that he is entitled to equitable tolling because he did not

4    receive his case file from Molfetta until August 2016, and thereafter diligently

5    sought to locate the investigatory documents he believed were missing.  (Dkt. 8 at

6    11–13.)  But unless a petitioner is raising a sufficiency of the evidence claim—

7    which Petitioner is not—"petitioners are not required by 28 U.S.C. § 2254 or the

8    Rules Governing § 2254 Cases to attach to their petitions, or to file separately,

9    state-court records."  <u>Pliler v. Ford</u>, 542 U.S. 225, 232 (2004).[15]  As discussed

10   above, none of Petitioner's unexhausted claims were dependent on newly

11   discovered evidence from the Molfetta civil case.  Further, once Petitioner received

12   his case file from Molfetta, he fails to justify why he could not have presented his

13   claims in a timely manner.

14          By no later than August 2016, Petitioner was aware of the factual bases for

15   his exhausted claims.  Ground Two contends that appellate counsel failed to obtain

16   the full trial record and raise five meritorious arguments on appeal.  (Pet. at 69–81.)

17   In support, he cites the trial record he received in April 2014 and the case file

18   received from Molfetta in August 2016.  (Pet. at 71, 76.)  In Ground Three,

19   Petitioner asserts the trial record and police reports—that he received in August

20   2016—"prove" he is factually innocent of the attacks on Jennifer D. and Sarah L.

21   (Pet. at 82; <u>see id.</u> at 82–95 (citing to trial record and reports received from

22   Molfetta).)  Ground Four alleges a <u>Miranda</u> violation, asserting police officers

23   denied Petitioner's request for counsel, although he was "severely intoxicated

24

25          [15] Petitioner contends that he "could not proceed on habeas corpus in State
26   court without supporting documents" and therefore "could not exhaust without
     them."  (Dkt. 16 at 8–9.)  But a state-court document requirement does not create an
27   exception to AEDPA's statute of limitations.  And Petitioner had the option to file
28   timely his federal habeas petition and seek a stay to exhaust in state court.

during his arrest and [the subsequent police] interview." (Pet. at 96.)  In support, he cites documents received from Molfetta.[16]  (Pet. at 96–97; Dkt. 8 at 492, 510–11.) Ground Five asserts a <u>Brady</u> violation, citing the Caballero <u>Brady</u> discovery information received from Molfetta in August 2016.  (Pet. at 102–06; Dkt. 8 at 514–601.)  In Ground Six, Petitioner alleges a wide-ranging ineffective assistance of counsel claim because five separate defense attorneys declared conflicts, causing a four-year delay in his trial, and the failure of his counsel to raise the claims described in Grounds Two through Five at trial or in a motion for a new trial.  (Pet. at 112–14.)  Petitioner did not need any information from Molfetta to make this claim. Since Ground One merely complains that the state courts erroneously denied his habeas petitions, Petitioner is not entitled to equitable tolling based on when he elected to file his habeas petitions in state court.

In sum, Petitioner has provided evidence that from June 2014 to August 2016, he diligently requested that Molfetta return his case file.  Molfetta's failure to return the file until Petitioner filed a civil complaint was "sufficiently egregious" to justify equitable tolling of AEDPA's one-year limitations period.  <u>See</u> <u>Spitsyn v. Moore</u>, 345 F.3d 796, 801 (9th Cir. 2003), <u>as amended</u> (Nov. 3, 2003) (habeas petitioner's attorney's conduct was sufficiently egregious to justify equitable tolling where attorney failed to return petitioner's file despite being contacted numerous times).  However, once Petitioner received his case file in August 2016, AEDPA's one-year statute of limitations began.  As discussed above, Petitioner provides no credible evidence why he waited from August 2016 until March 2018 to begin his first round of habeas petitions in the state courts.  Because no tolling—either

---

[16] In his Objections, Petitioner argues that his "intoxication is only cited as a contributing factor in the improper behavior of the officers involved when they did not end the interrogation after Plaintiff requested his counsel." (Dkt. 26 at 3.) Nevertheless, Petitioner received the transcript from his custodial interrogation in August 2016 and provides no reason for waiting until March 2018 to begin exhausting this claim.

1   statutory or equitable—is available for this 19-month gap, Petitioner's federal
2   habeas petition is untimely.

3        Further, even if the Court found that Petitioner was entitled to equitable
4   tolling until March 29, 2018, when he filed his first habeas petition in Orange
5   County Superior Court—which the Court is *not* finding—Petitioner's habeas
6   petition would still be untimely.  Under this hypothetical scenario, Petitioner would
7   have had until February 13, 2020—one year after the California Supreme Court
8   denied his habeas petition—to file his habeas petition in federal court.  Instead, he
9   filed it over nine weeks later, on April 21, 2020.

10  **D.    Actual Innocence.**

11       Under Schlup v. Delo, 513 U.S. 298 (1995), "a credible claim of actual
12  innocence constitutes an equitable exception to AEDPA's limitations period, and a
13  petitioner who makes such a showing may pass through the Schlup gateway and
14  have his otherwise time-barred claims heard on the merits."  Lee v. Lampert, 653
15  F.3d 929, 932 (9th Cir. 2011).  The Schlup equitable exception is different than the
16  delayed-start-date provision for new evidence in § 2244(d)(1)(D), discussed above.
17  "Section 2244(d)(1)(D) is both modestly more stringent (because it requires
18  diligence) and dramatically less stringent (because it requires no showing of
19  innocence)."  McQuiggin v. Perkins, 569 U.S. 383, 395 (2013).

20       However, "[i]n order to present otherwise time-barred claims to a federal
21  habeas court under Schlup, a petitioner must produce sufficient proof of his actual
22  innocence to bring him 'within the narrow class of cases implicating a fundamental
23  miscarriage of justice.'"  Lee, 653 F.3d at 937 (quoting Schlup, 513 U.S. at 314–
24  15).  While a petitioner is not required to proffer evidence creating an "absolute
25  certainty" about his innocence, the Schlup gateway is an "exacting standard" that
26  permits review only in the "extraordinary case."  Id. at 938 (citing House v. Bell,
27  547 U.S. 518, 538 (2006) ("[I]t bears repeating that the Schlup standard is
28  demanding and permits review only in the 'extraordinary' case.")).

23

Specifically, a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup, 513 U.S. at 327. The petitioner must support his allegations "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. at 324. "[U]njustifiable delay on a habeas petitioner's part," while not "an absolute barrier to relief," is "a factor in determining whether actual innocence has been reliably shown." McQuiggin, 569 U.S. at 387.[17]

In exhausted Ground Three and unexhausted Ground Eight, Petitioner asserts that "missing cell phone ping details" and "Holland's declaration" prove that he is actually innocent of the attack on Sarah L. that occurred on February 21, 2007.[18] (Pet. at 3, 7, 13, 36–38, 82–95; Dkt. 8 at 13–14, 111–19; Dkt. 16 at 7.)  Petitioner contends that his cell phone records from February 21, 2007, were "subpoenaed and delivered to the court [in his criminal trial]" and would "prove Petitioner's whereabouts at the time of the supposed attack on Sarah L." (Pet. at 90; Dkt. 8 at 113.)  He argues that "[t]he Prosecution withholding the Call/Ping Details prove that they knew Petitioner was innocent of this Specific charge." (Dkt. 8 at 115.)  But Petitioner does not provide any evidence that his "cell phone ping records" were ever subpoenaed.  Instead, the subpoenas sought "call detail and text detail" as

---

[17] In his Objections, Petitioner contends that "[e]vidence which is not patently false, illogical, or inherently inconsistent meets the Prima Facie standard for [the Schlup actual innocence] test." (Dkt. 26 at 18 (apparently quoting McQuiggin, 135 S. Ct. at 1935)).  But neither this quote nor this holding appears anywhere in the McQuiggin decision.  Instead, "a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" McQuiggin, 569 U.S. at 399 (quoting Schlup, 513 U.S. at 327).

[18] Petitioner also vaguely asserts that the Holland declaration proves that he is "actually innocent of the February 21, 2007 forcible rape of Latisha B[.]" (Pet. at 7.)  But the forcible rape of Latisha B. occurred on August 13, 2006, not February 21, 2007.  (CT 298–99, 556–58.)

24

1   "[s]uch records were kept in the course of a regularly conducted business activity."

2   (Dkt. 8 at 267–68, 280.)  Accordingly, T-Mobile produced Petitioner's call detail

3   records for the relevant period, copies of which were provided promptly to

4   Petitioner's trial counsel.  (Dkt. 8 at 272–74, 276–78.)  While these records indicate

5   the calls and text messages Petitioner sent or received on February 21, 2007, they

6   do not prove where he was at the time of the attack on Sarah L.[19]

7        Neither is the Holland declaration persuasive evidence of actual innocence.

8   A declaration executed almost 13 years after the attack on Sarah L. is not the kind

9   of "trustworthy eyewitness account" described in <u>Schlup</u>.  513 U.S. at 324.  As

10  discussed above, the timing of the Holland declaration is highly suspect.  Despite

11  Petitioner arguably knowing prior to trial who could prove his whereabouts on

12  February 21, 2007, the declaration was provided only after he was convicted and he

13  had filed multiple appeals and habeas petitions.  See <u>Qadar v. United States</u>, No.

14  13-CV-2967, 2014 WL 3921360, at *7, 2014 U.S. Dist. LEXIS 111472, at *22

15  (E.D.N.Y. Aug. 11, 2014) (finding timing of affidavits in support of actual

16  innocence claim "highly suspect" where the petitioner "had ample opportunity to

17  investigate any information that these witnesses had prior to trial, all four

18  declarations were provided only after petitioner was convicted, and the second set

19  only after this court made a ruling unfavorable to petitioner").  Holland does not

20  explain why he waited until 2020 to provide his declaration or why he would

21  remember the details of Petitioner routinely cutting his hair on this particular date

22  so many years later.  Moreover, Sarah L. provided compelling testimony about the

23  details of Petitioner's attack.  (RT 505–609.)  Under these circumstances, it is not

24  likely that a jury would find Holland's testimony to be persuasive evidence of

25

26      [19] In his Objections, Petitioner speculates that "specific records from the date
    of February 21, 2007, were removed before the documents were turned over by the
27  prosecution."  (Dkt. 26 at 7.)  However, even if more call records from February 21
    existed, they would not prove where Petitioner was when he made the calls.
28

1   Petitioner's innocence of the attack on Sarah L.  Cf. Jones v. Taylor, 763 F.3d

2   1242, 1251 (9th Cir. 2014) ("Evidence that merely undercuts trial testimony or

3   casts doubt on the petitioner's guilt, but does not affirmatively prove innocence, is

4   insufficient to merit relief on a freestanding claim of actual innocence.").

5        In sum, the Holland declaration does not demonstrate an "extraordinary case"

6   that brings Petitioner "within the narrow class of cases implicating a fundamental

7   miscarriage of justice."  Schlup, 513 U.S. at 314–15; see House, 547 U.S. at 538;

8   Lee, 653 F.3d at 937–38.  Thus, Petitioner is not entitled to an equitable exception

9   to AEDPA's limitations period and cannot have his otherwise time-barred claims

10   heard on the merits.

11   **E.    <u>Motion for Discovery.</u>**

12        Petitioner has filed a motion for discovery pursuant to Rule 6 of the Federal

13   Rules Governing Section 2254 Cases.  (Dkt. 25; see also Dkt. 26 at 25–28.)  Rule 6

14   provides that the court "may, for good cause, authorize a [habeas petitioner] to

15   conduct discovery under the Federal Rules of Civil Procedure and may limit the

16   extent of discovery."  SECT 2254 Rule 6(a).  However, unlike the usual civil

17   litigant in federal court, a habeas petitioner "is not entitled to discovery as a matter

18   of ordinary course."  Bracy v. Gramley, 520 U.S. 899, 904 (1997).  Instead, "where

19   specific allegations before the court show reason to believe that the petitioner may,

20   if the facts are fully developed, be able to demonstrate that he is entitled to relief, it

21   is the duty of the court to provide the necessary facilities and procedures for an

22   adequate inquiry."  Id. at 908–09 (citation omitted).  Thus, "discovery is available

23   to habeas petitioners at the discretion of the district court judge for good cause

24   shown."  Jones v. Wood, 114 F.3d 1002, 1009 (9th Cir. 1997); see Bittaker v.

25   Woodford, 331 F.3d 715, 728 (9th Cir. 2003) (en banc) (discovery in habeas

26   proceedings is available only on a showing of "good cause").  Here, Petitioner

27   seeks discovery to develop the record in a number of areas.  As discussed below,

28   none of his requests establish good cause for discovery.

### 1.  Petitioner's Phone Records.

Petitioner seeks an order requiring the Orange County District Attorney to "turn over the February 21, 2007 twenty pages of Petitioner's phone records … that are missing … [and] can prove Petitioner's actions on the date and time in question."  (Dkt. 25 at 3.)  However, as discussed supra § IV.D and note 18, even if these additional records exist, they would be records of calls made or received—not "ping" location records—and thus they would provide no proof of where Petitioner's cellular phone was on February 21, 2007.

### 2.  Interrogatories to Lawrence Holland.

Petitioner asks the Court to "order interrogatories to develop facts surrounding Holland[']s Declaration and any questions the Court may have."  (Dkt. 25 at 4.)  But Petitioner has presumably known for over 13 years that Holland could testify about Petitioner's whereabouts on February 21, 2007.  Holland attested that Petitioner was "[his] personal Hair Stylist for many years."  (Dkt. 8 at 235.) Petitioner has not credibly asserted why someone with whom he had a relationship for "many years" was impossible to locate until now.

### 3.  Interrogatories and Authentication of Signature on Brady Receipts for Frederick McBride.

Petitioner seeks "interrogatories to verify that the Brady receipts are forgeries or not."  (Dkt. 25 at 4.)  The Court in its discretion will not permit discovery based on Petitioner's mere speculation and his lay opinion that the McBride signature is a "forgery."  See Calderon v. U.S. Dist. Court for the N. Dist. of California, 98 F.3d 1102, 1106 (9th Cir. 1996) ("[C]ourts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation."); see also United States v. Mohsen, 812 F. App'x 621, 622 (9th Cir. 2020) ("We have consistently rejected, however, attempts by prisoners to use federal discovery for fishing expeditions to investigate mere speculation, requiring instead that a defendant outline factual allegations in a habeas petition before the district court will be able

27

to determine the propriety of discovery.") (citation omitted).  Further, as discussed <u>supra</u> § IV.A.3.b and notes 10–11, even if discovery were to indicate that the Caballero <u>Brady</u> information was not given to Petitioner's counsel prior to trial, it would not entitle Petitioner to equitable tolling.  He had evidence of Caballero's alleged corruption long before the Molfetta civil trial.  For example, the Caballero <u>Brady</u> materials were included in the documents provided to Petitioner by Molfetta in August 2016.  (Dkt. 8 at 514–601.)

### 4. Interrogatories to Dr. White.

Petitioner seeks interrogatories to Dr. White to verify his work and that "the new scientific standard is a person cannot store memories after consumption of alcohol with a BAC of 0.16 or over in a blackout state."  (Dkt. 25 at 4.)  Petitioner contends "[t]his evidence will prove that the expert witness testified falsely, and witnesses testified falsely."  (<u>Id.</u>).  However, as discussed <u>supra</u> § IV.A.3.d and note 12, even assuming that Dr. White's study is competent evidence, there is no evidence that the witnesses were in a blackout state, Latisha B. acknowledged being very intoxicated, and the jury heard expert testimony that a very intoxicated person's memories are suspect.

## V.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Final Report and Recommendation; (2) granting Respondent's motion to dismiss the Petition as untimely; (3) denying Petitioner's motion for discovery; (4) denying Petitioner's motion for stay and abeyance as moot; and (5) directing that Judgment be entered dismissing the petition and dismissing this action with prejudice.

DATED:  <u>November 16, 2020</u>

_____
KAREN E. SCOTT
United States Magistrate Judge